Estate of Nakuapa.

## SUPREME COURT—IN BANCO.

### JANUARY TERM—1873.

*Allen, Ch. J., Hartwell and Widemann, J. J.*

### Estate of Nakuapa, deceased.

AN ANCIENT ADOPTION of an HEIR must be shown by EVIDENCE that it was a clear, definite, and reasonably notorious act of adoption.

Evidence that the kindred did not know the adoption was made is not NEGATIVE and HEARSAY, but is part of the case to be proved.

OPINION OF THE COURT BY WIDEMANN, J.

Keahi, claiming to be a relative of the deceased, petitioned the Court for letters of administration on the estate of Naku-apa. Kaaoaopa contested the appointment, and the Chief Justice, before whom the case was heard, appointed A. F. Judd temporary administrator, as there were several claim-ants.

Kaaoaopa claimed the estate as adopted child (keiki hanai) of the deceased, and all the others claimed as blood relations. The Chief Justice decided against the claimant. Under this state of facts an appeal was taken from the decision of the Chief Justice to a jury, and a verdict was rendered in the July term, 1869, that Kaaoaopa was "a keiki hanai" of Puhalahua and Nakuapa. A motion to set aside the verdict for want of evidence was denied. In December, 1870, a decree *pro forma* was made, based on this verdict, by the Chief Justice, awarding the estate to the claimant. From this decree an appeal was taken to the full Court in banco. The full Court, January term, 1872, decided that the verdict rendered was irresponsive to the issue, and a new trial was ordered. This new trial was had in the January term, 1872,

and the verdict of the jury was that the claimant was not "the adopted heir of Nakuapa and Puhalahua." Exceptions to the full Court were taken, and the verdict was set aside for the admission of incompetent evidence. The whole case now is submitted to the full Court on all the evidence, to decide whether Kaaoaopa is the adopted heir of Nakuapa and Puhalahua, and entitled to inherit the estate.

The decision of the Court in the January term, 1872, was given by ALLEN, C. J. : "The majority of the Court are of opinion that there was, prior to the written law, a custom and usage which recognized an adoption, if clearly defined in the contract, by which the child adopted might be an heir to the property of the adopter ;" and WIDEMANN, J. : "The adoption of a child as heir, clearly and definitely made according to Hawaiian customs and usages, prior to the written law, I hold to be valid under existing laws, and I therefore," &c., &c.

The custom of adopting an heir, by the above decision made the law of the land, must be not alone clearly and definitely made, but.it must also be proven that it was clearly and definitely made. The very idea of "clearly and definitely adopting an heir" necessitates the publicity of the act, and all the evidence on this point given at different times during the progress of the case tends to prove that the adoption of an heir by a chief was a matter of notoriety.

The question in the case at bar is : Was the claimant, Kaaoaopa, adopted as an heir by Puhalahua and Nakuapa ? was she adopted clearly and definitely, and was there a reasonable amount of notoriety of the fact ?

The brief of claimant's counsel fully and ably sets forth the evidence and argument of his case, and taking them as a basis, and without considering the evidence on the opposite side, I have arrived at the conclusion that he has failed to establish the claimant's title.

The only witness of the actual adoption is Kapu ; and he is

also the only witness who states that Puhalahua and Nakuapa were living together at the time of the adoption. According to him, Puhalahua was not at the first sandalwood expedition. His evidence given at three different times, does not give me an impression completely favorable as to its reliability in all particulars. Kukahiko's principal knowledge dates from the first sandalwood expedition. There, in the mountains of Waialua, Puhalahua and Kaahumanu told him of his adoption, and he consequently told the king of it. His recollection as to the date of the birth of claimant, the date of the sandalwood expeditions, and the age and height of the claimant at the first sandalwood expedition is not of the clearest. Kapu, being Puhalahua's head man, would best recollect whether or not his master went to the first sandalwood expedition. Taking, therefore, his statement to be the correct one, who told Kukahiko of the adoption at this sandalwood expedition? and what is the value of the evidence on that especial matter unless Puhalahua himself told him?

From the whole tenor of the evidence I do, however, find that Puhalahua and Nakuapa acknowledged claimant as *kaikamahine hanai* at various times; but I am not satisfied that, if Puhalahua adopted claimant at the time referred to by Kapu and Kukahiko, Nakuapa was in any way concerned in that adoption. I also find from the evidence that Nakuapa frequently held out hopes of inheritance to claimant. Puhalahua perhaps did so also. From all the *words* used by the witnesses on this head I could not for a moment infer that they referred to a forgone conclusion. What Puhalahua himself meant by them he has shown by his will.

Kapu, at this hearing, states that both Puhalahua and Nakuapa, at the time of the adoption, declared that they adopted claimant as their heir. This, and this only, is all the proof offered to sustain claimant's title to the estate under the decision of the Court cited above. This decision

Estate of Nakuapa.

was made under the impression that this "adoption of an heir" was a *Hawaiian. custom.* If ever it was such, Hawaiians knew it, and the witness knew it. Had the witness given this evidence at the first hearing, it would have carried great weight; its coming at this late day materially detracts from its weight.

There being no proof of any notoriety whatever, and with such frail evidence of the "adoption as heir," the claim must fall.

HARTWELL, J. This case, which has been litigating for several years, is now submitted to the Court on all the evidence to find the facts, and to decide whether the claimant Kaaoaopa is entitled as heir to inherit this estate. These proceedings began in 1869 by petition for administration, which was brought before His Honor Chief Justice ALLEN and the claim of Kaaoaopa was denied. On appeal to a jury, a verdict was rendered at the July term, 1869, that the claimant was a *keiki hanai* or foster child of Puhalahua and Nakuapa. A motion to set aside this verdict for want of evidence was denied. In December, 1870, a decree was made by His Honor the Chief Justice awarding the estate to the claimant by virtue of this verdict. Appeal was taken from this decree to the full Court in banco, by whom the decree was vacated and a new trial was ordered. The Court agreed that the verdict was inconclusive of the issue and therefore not sufficient basis for the decree, but were divided on 'the question of the present legality of an ancient adoption as heir. The Chief Justice and Second Associate regarded the custom as still valid, while the First Associate Justice thought that the statutes requiring written wills and deeds and agreements of adoption and directing the descent of property of intestates, operated to cut off claims under the ancient oral mode of adopting heirs, in all cases in which the ancestor died after the enactment of those statutes.

At the second trial in the January term, 1872, a verdict

against the claimant was rendered, but on exceptions to the full Court, was set aside for the admission of incompetent evidence. The Court however overruled exceptions to the following instructions given to the jury, viz. : "Declaration since 1843, (the date of the Act requiring written agreements of adoption), cannot be received ; the adoption if valid must have been made before 1843. It is not enough that Puhalahua took the child before his marriage with Nakuapa, but it must be shown that Nakuapa adopted her as an heir." In approving these instructions, the Court said, "The ancient oral adoption has no force unless complete before 1843," and that "Puhalahua's will may be regarded as annulling his adoptive act, which in no aspect of the case became an antenuptial contract binding on the widow unless expressly disaffirmed by her. The widow's mere silence would not suffice to show her revival of the original adoption."

The evidence shows to my mind the following state of facts, briefly stated : About 1827 or 1828, Puhalahua a man of chief rank adopted the girl Kaaoaopa as his child, the woman Nakuapa a former servant of his whom he afterward married, joining in the adoption.. The child lived with them until their death. Puhalahua died in 1866 devising all his estate to Nakuapa, who died intestate in 1869. She had conversed with her attorney Mr. Austin about making a will, but when he arrived at her house just before her death, to draw her will at her request, she was too weak to act. She had never named Kaaoaopa to him as her intended devisee. Both Puhalahua and Nakuapa were heard at various times to speak of the child as their "hooilina," a word meaning "heir" or "devisee." One witness said they called her so at the time of the original adoption. On the other hand, many persons connected by blood and marriage, or on intimate terms with the parties, testified that they had never been aware of the child's adoption as heir, or that she was regarded by the adopters as their heir. To this evidence

the claimant's counsel strongly objected, as of a negative hearsay nature, incompetent to rebut evidence of an adoption, but the Court admitted it on the ground that no adoption of an heir can be recognized as valid unless it be shown that it was made with sufficient clearness and publicity among the kindred and family friends to make them aware of it.

It does not seem to me that the claimant has shown her adoption as the heir of Nakuapa under the rules of law as already laid down by this Court. I am not satisfied of the fact on all the evidence in her favor. All the objections to oral wills apply with full force in this class of cases, for memory is often at fault in regard to declarations made many years ago ; and such declarations, unless confirmed in ample manner, are unsatisfactory for the purpose of showing so solemn an act as the adoption of an heir. This Court has ruled out declarations since 1843, as incompetent under the Act which requires a written agreement of adoption. If such evidence were admissible except for the Statute, it would certainly be as likely to show a mere promise held out, or an intention never carried into effect, as to explain a previous act. Puhalahua's will, made in 1854, shows that he was early aware of the importance of making a will ; so was Nakuapa, as shown by her attorney, Mr. Austin.

The Court held, as the evidence shows, that the adoption of an heir must be shown by circumstances of notoriety among the kindred and family circle of the parties. The objection to this evidence does not seem to me to be valid. The relation sought to be established is not the ordinary one of pedigree, but is one unknown to English and American law. Under that law, evidence of family conduct and of kindred is admitted. Berkely Peerage case, 4 Camp., 416. Shrewsbury Baronetcy case, 7 House Lords, 1. Tichborne Baronetcy case, —.

Whatever the grounds of the English rule, whether it be that such evidence is in the nature of admissions against

evidence, part of the *res gestae*, or confirmatory ˙of facts otherwise shown, in this case this evidence is admitted on the broad ground that the requisite publicity is a portion of the case to be proved. In a private bilateral or trilateral contract, want of knowledge on the part of those not parties to it would be negative and incompetent; but it is material in this case, which requires such knowledge to be shown in order to its validity.

I see no sufficient grounds for thinking that Nakuapa adopted Kaaoaopa as her heir, and therefore I concur in the judgment of the Court disallowing her claim.

ALLEN, C. J.   The question of the claimant's right of inheritance as an adopted child of Nakuapa was submitted originally to the Court of Probate, in which I presided, and after careful examination of the law and evidence, I decided that by the ancient custom of Hawaiians, children adopted as heirs were entitled to the inheritance, but in this case the claimant had not established that relationship, and therefore was not entitled to the inheritance on that ground. As my associates have given very succinctly and clearly, the testimony, I consider it unnecessary to say more than that I see no reason, from any additional testimony introduced in the subsequent hearings, to change my opinion, and therefore I concur with them.

W. C. Jones for the claimant.

A. F. Judd and S. B. Dole, *contra*.